PATTERSON, Chief Judge.
3679 Waters Avenue Corporation (the landlord), the owner and operator of a shopping center, appeals from the final judgment determining that it breached its lease with the appellees (the tenants) and awarding damages. Because we hold that *350 the lease is ambiguous with regard to the landlord’s obligations regarding renovations, we reverse and remand for a new trial to allow the parties the opportunity to present parol evidence of their intent.
The tenants operate several Italian restaurants in Florida. In January 1995, they entered into a lease with the landlord for space for a restaurant at the Fashion Square Shopping Center in Tampa. The lease was to commence on June 1, 1995. The tenants did not occupy the premises and on August 21, 1995, wrote to the landlord requesting to reopen negotiations regarding the lease. On September 14, 1995, the landlord made written demand for the payment of past due rent. The tenants responded with a letter stating that they “have decided neither to lease, build out nor occupy the space in your shopping center.” The landlord then instituted this action for breach of the lease agreement. The tenants counterclaimed seeking damages, and a nonjury trial was held in 1997.
The trial court found the lease to be clear and unambiguous and the following provision to be controlling.
Section 2.03 — Construction/Possession. Except as to structural defects of which Owner is notified within one hundred twenty (120) days from the date Owner delivers possession of the Premises to Tenant, Owner and Tenant hereby agree that Tenant’s taking possession of the Premises shall be deemed conclusive evidence of Tenant’s acceptance of the Premises in satisfactory condition and in full compliance with all covenants and obligations of the Owner in connection therewith. Tenant agrees that it will accept possession of the Premises in an “as is” condition and that no representations or inducements respecting the condition of the Premises have been made by Owner to Tenant and no promises to decorate, alter, repair, or improve the Premises, either before or after the execution hereof, have been made by Owner or its authorized representatives other than as specifically set forth herein. Oumer agrees that following demolition of a portion of the building in which the Premises are located Owner will construct either a standard storefront or a concrete block wall and glass opening on the exterior wall of the premises located adjacent to the Premises.... Landlord agrees to remove shrubbery from around the Premises, in the locations indicated on Exhibit “A”, upon notification from Tenant. The shrubbery, as described in Exhibit “A”, ivill be removed within two (2) weeks after Landlord’s receipt of said notification from Tenant.
It was undisputed that the landlord advised the tenants in June 1995 that it would not perform any demolition or construction of the leased premises. The court determined this to be a material breach on the part of the landlord and awarded $9,186.66 in damages (deposit and prepaid rent) to the tenants.
The landlord directs our attention to the following language in section 2.01 of the lease:

The parties recognize that Oumer is contemplating a major renovation of the Shopping Center following execution of this Lease. In connection with such renovation, Owner shall have the right to perform such construction activities as may be necessary in order to reconfigure the common areas and buildings in substantially the manner shown on the preliminary site plan attached as Exhibit “A”. In furtherance of the foregoing, Tenant recognizes that during the phase of construction involving demolition of portions of the building in which the Premises are located and reconfiguration of the adjacent parking areas, Oumer may be required to discontinue utilities to the Premises for up to seventy-two (72) hours and tempo-rality block direct access to the Premises from the adjacent parking areas. If, as the result of such activities, Tenant is temporarily unable to operate its busi
*351
ness within the Premises, Owner agrees to abate all Rent and other charges during any period during which Tenant is reasonably unable to operate its business. In no event, however, shall such construction activities be deemed a constructive eviction of Tenant nor shall Tenant have any claim against Owner for any loss to Tenant’s business arising out of such constmction activities, except the right to rent abatement as set forth above.

The landlord contends that this provision creates an ambiguity in the lease as to whether there was a fixed commitment on its part to do any demolition or renovation whatsoever. The landlord asserts that if permitted to introduce parol evidence, it can clearly demonstrate that there was no such fixed commitment and that the tenants were motivated to breach the lease for reasons unrelated to renovations.
This court is on equal footing with the trial court in the interpretation of a contract. See Florida Mining & Materials Corp. v. Standard Gypsum Corp., 550 So.2d 47 (Fla. 2d DCA 1989). From a review of the lease as a whole, we determine that it is ambiguous as to the parties’ intent regarding the • renovations. We therefore reverse and remand for a new trial to allow the parties to submit parol evidence on the issue of intent. This determination renders the issue presented in the cross-appeal moot. We likewise reverse the award of attorney’s fees to the tenants in consolidated case number 98-04295.
Reversed and remanded.
THREADGILL and CASANUEVA, JJ„ Concur.